LEO D. SCHAFFER, Trading as the HELLEN DRESS COMPANY, Plaintiff, *v*. MECHANICS AND TRADERS INSURANCE COMPANY, NEWARK FIRE INSURANCE COMPANY, GERMAN FIRE INSURANCE COMPANY OF PEORIA, and HOME INSURANCE COMPANY, Defendants.

(Municipal Court of the City of New York, Borough of Manhattan, Second District, March, 1917.)

Venue — when motion for change of, denied — Municipal Court of city of New York — action upon policy of fire insurance.

    Where an action was brought in the Municipal Court of the city of New York, borough of Manhattan, second district, where plaintiff resided, to recover upon a policy of fire insurance covering property contained in his place of business which was located within the third district of the borough of Manhattan, defendants' motion for a change of venue to either that district or to the second district of the Bronx will be denied.

MOTION for a change of venue.

Municipal Court of New York, March, 1917. [Vol. 99.

Leo Levy, for motion.

Goldstein & Goldstein, opposed.

LEVY, J. This is a motion that comes before me as presiding justice of the court for a change of venue in the above entitled actions from the second district Manhattan to either the third district Manhattan or the second district Bronx upon the grounds, substantially, (a) " that an impartial trial cannot be had in the district in which these actions are brought, and (b) that the ends of justice would be promoted by the change of place of this trial." These actions were commenced against these several defendants to recover in total the sum of $3,158.97 upon policies of fire insurance covering the plaintiff's property while contained in the premises No. 147 West Thirty-sixth street in this borough, and which aggregate some $5,000, and issue was joined during the month of April, 1916. From the defendant the Mechanics and Traders Insurance Company is sought the sum of $774.24; from the defendant the Newark Fire Insurance Company, a similar sum; from the defendant the German Fire Insurance Company of Peoria, the sum of $610.49, and from the Home Insurance Company, the sum of $1,000, each as a proportionate share of alleged settlement agreements made between these parties for damages, which the plaintiff claimed to have suffered by reason of a fire occurring in the aforementioned premises on the 7th day of December, 1915. The defendants claim that subsequently to the making of these agreements they discovered evidence of incendiarism as well as false proof of loss and therefore repudiated the settlements upon the theory that they were procured and induced by fraud and misrepresentation, a perfectly good defense, if true. In support of the

motion it is alleged that counsel for the moving parties had considerable experience during the last eight or ten years in the trial of causes such as these, in this district, representing defendant fire insurance companies, on claims arising upon fire losses, and that during the examination of talesmen, he was unable to secure men who had not previously presented claims against fire insurance companies. It is further insisted that this district is so constituted that the community interest is conspicuously maintained; that most, if not all, of the talesmen summoned are naturalized citizens whose knowledge of the English language is not the best, and that very few of them have been educated in American schools; that there is a deep sympathy for persons occupying the position of this plaintiff and that an unjust and grave prejudice exists against insurance companies, so much so that no matter what the facts be, and no matter how righteous the defense, it is simply impossible to secure a verdict in behalf of a defendant insurance company. In fact a reading of the moving papers unhesitatingly leads one to the absolute inference that the calibre and the character of these talesmen are such as to render them wholly unfit for this rather high public service. There is vague and veiled suggestion that for the purpose of unjust enrichment these men permit themselves to be engaged in certain improper practices, which give rise to the bias complained against. To comment upon the latter, would, it seems to me, dignify a generality that deserves no other treatment than to be summarily dismissed. The moving papers also lay claim to the establishment by the plaintiff of a fictitious residence within the territory of this district in order to there secure a trial of this action; that the plaintiff might enjoy the advantages of, and the defendants suffer from, the rather grave and alarming conditions pointed

out.  Of course, these allegations are denied by the answering affidavits.  Section 17, subdivision 1, of the Municipal Court Code in part provides: ''An action *must* be brought in a district in which either the plaintiff or defendant or one of the plaintiffs or one of the defendants *resides.*  *  *  *.''  This disposes of the defendants' claim to a transfer of this cause to the third district Manhattan for concededly the premises No. 147 West Thirty-sixth street, which are within the latter district, were merely the *place of business* of the plaintiff and not his *residence.*  Subdivision 2 of this section also in part provides: '' If the action is brought in the wrong district, it may nevertheless remain there unless the defendant *demands* that it be transferred.  Such *demand* must be made in writing and filed with the clerk *before* or *at* joinder of issue *  *  *.''  Here, issue was joined during April of last year and no demand as required by the foregoing provisions was made or filed; but the defendants present these motions pursuant to authority claimed by them as existing within subdivision 3 of section 7 and subdivision 5 of section 17 of the Municipal Court Code.  Section 7, subdivision 3, authorizes the president of the board of justices of this court among other things to '' transfer cases for trial from one district to another *in the same borough.''*  Section 17, subdivision 5, in part provides: '' Nothing in this section shall be construed to prevent  *  *  *  the president of the board of justices from transferring cases from one district to another *in the same borough.''*  Having disposed of the matter of the transfer to the third district, the defendants' application in the alternative calls for a change to the second district of the Bronx.  Clearly, I am without power to grant that, for in both subdivision 3 of section 7 and subdivision 5 of section 17 I am limited to an exercise of the right to transfer causes

or to change the venue from one district to another, *in the same borough.* This court being in the borough of Manhattan and the place to which the transfer is sought being in the borough of The Bronx, two separate and different boroughs, neither provision is of any aid. The motion for these reasons must be denied.

Were it not, however, for the gravity of the charges laid by the moving papers I should content myself with this disposition. I cannot, however, reconcile myself to permitting them to go unchallenged. My opinion is that the assault upon the integrity of the jurors of this court, as a class, is not only wholly unwarranted but absolutely cruel. The men of this community, who are endeavoring to do their public duty by yielding up of their precious time that which is essential to proper jury service, hardly need any defense from me; but, lest my silence be regarded as tantamount to assent, tacitly at least, in their behalf I vigorously resent these unjust imputations. Then, too, I consider this a most unfortunate reflection upon the commissioner of jurors of this county. Section 121 of the Municipal Court Code provides the manner and the means by and from which jurors for this court shall be chosen, and perhaps it may be well to give the very language of this enactment in part at least: " *Trial jurors* for such terms shall have the *same qualifications* and shall be *selected, drawn* and *notified* by the *same authorities* and in the *same* manner as *trial jurors* of the *supreme court* held in the county in which such terms are held; and all provisions of the judiciary law and of the code of civil procedure, as they may be amended from time to time, except such as are inconsistent with this act, are hereby made to apply to this court and to trial jurors therein. * * *. So far as the *commissioner of jurors,* * * * shall find it to be *practicable,* each juror drawn shall be summoned

to the district nearest to his *residence* or *place of business*. Such jurors shall be paid the same compensation as trial jurors in the *supreme court* held in the county in which they serve.''

Unlike the practice of old, when perhaps just criticism might have been leveled against our then jury system, at present the commissioner of jurors is charged with the serious responsibility of selecting, drawing and notifying the talesmen; they are required to have the same qualifications as those drawn for the Supreme Court; he is charged with the duty of determining these qualifications and upon him devolve not only these duties but also the power, so far as he '' *finds it to be practicable,*'' to summon jurors to the district nearest their residence or place of business. In this manner, experience has demonstrated that a considerable number of the talesmen who are now serving actually do not reside within the territory of this judicial district and come from parts entirely remote. All the provisions of the Judiciary Law and the Code of Civil Procedure as they have bearing on either the qualifications or method of selection of jurors are made to apply to this court, and, if omission was occasioned in any respect, it must have been the omission of the commissioner of jurors. I have been in attendance very frequently at the latter's office in behalf of the court, at the selection and drawing of jurors, and I can confidently speak from personal knowledge and observation that this court receives precisely the same consideration in regard to its talesmen as do the various other courts within the county. Counsel, therefore, is apparently in error, and I shall not comment upon the matter of crimination contained in the papers nor upon the recital of what he regards as his unfortunate experience in the trial of causes in this district, except to say, that the juries which he was obliged to meet

during all these years might properly have felt that their verdicts as rendered were entirely just. Besides, I have come to regard his charges as being entirely too general, and if he feels aggrieved he might promptly apply to the commissioner of jurors and there receive such consideration as he may be deserv. ing. Since the argument of this motion I have diligently and studiously inquired into the prevailing conditions — which occasioned the delay of this decision — and I learn from my associates who have presided over the jury parts of this court, that the jury service of our talesmen is highly satisfactory; that the verdicts indicate conscientious endeavor to do *only* the right. These distinguished associates of mine are well known to be of the visiting judges, not those residing in this community, but altogether judges who come from every other part of the city. It is equally well known that the two jury parts of this court, since their formation, exclusively, have always been presided over by judges other than from this district. It is significant, too, that, as these judges observe, casualty and railroad companies both defending large volumes of litigation in this district have come to the practice of demanding jury trials. To my way of thinking fire insurance companies, relatively, occupy the position almost if not entirely identical with that of casualty and railroad companies in the matter of litigation in this part of the city; and why jurors should act in respect of the two last named in one manner and as to fire insurance companies in a diametrically opposite one, is difficult for me to conceive, unless even-handed justice requires it. It may be true that a large number of our citizens are of the naturalized class, it may also be true that few of them were fortunate enough to enjoy attendance in our common schools, but neither nor both of these misfortunes make for a lack of intelli-

gence or honesty and do not necessarily mean that the talesmen are not sufficiently well equipped to adequately understand our language.

On the contrary, a higher effort to acquire education is unknown anywhere in this republic. There are more public and private schools within this judicial district, I dare say, than within any other similar territory, the city over. The intelligence of the citizenship of this community is too well known to permit of unearned rebuke of this character, and finally, were it not for the legal impediments, I do not hesitate to say that I would have summarily denied this motion upon the merits.

Motion, therefore, is denied, with ten dollars costs to the plaintiff.

Motion denied, with costs.